## TEXAS–CAROLINA OIL CO. v. FIRES, District Judge.
### No. 1541—5857.

Commission of Appeals of Texas, Section A.
April 28, 1932.

Robert E. O'Keefe, of Longview, for relator.

A. T. Cole, of Clarendon, for respondent.

HARVEY, P. J.

This is an original proceeding for mandamus instituted in the Supreme Court by the relator, Texas-Carolina Oil Company, against the respondent, Hon. A. J. Fires, judge of the district court of Donley county. The writ is sought to compel the respondent to set aside a judgment, entered by said court, dismissing for want of prosecution a certain suit in trespass to try title, brought by the relator as plaintiff against T. B. Lovelace and R. A. Lovelace as defendants. Said judgment of dismissal was entered on October 14, 1930, at a regular term of said court which ended November 12, 1930.

A judgment of dismissal, entered by a district court, finally disposes of the particular suit, and the Supreme Court does not have original jurisdiction to inquire as to the regularity of such judgment or to direct that it be set aside. Original jurisdiction to grant relief in respect of such a judgment lies in the district court which rendered the judgment. Osborne v. Younger (Tex. Com. App.) 235 S. W. 558; Green v. Green (Tex. Com. App.) 288 S. W. 406; Nachant v. Montieth, 117 Tex. 214, 299 S. W. 888.

We recommend that the writ of mandamus be denied.

CURETON, C. J.

The opinion of the Commission of Appeals is adopted and the mandamus refused.

## WINNINGHAM v. DYO et al.
### No. 1321—5834.

Commission of Appeals of Texas, Section B.
April 21, 1932.

M. M. Winningham and Knollenberg & Cameron, all of El Paso, for plaintiff in error.

Davis, Tittmann, Roche & Mirando, of El Paso, for defendants in error.

RYAN, J.

Plaintiff in error, administrator of the estate of Benito Colonna, deceased, by plea in intervention in suit originally filed by Flavia Cisneros Colonna and M. M. Winningham, guardian of the estate of Guillermo Horacio Colonna, a minor, against Tsutomu Dyo, II. Kishi, North Mexican Mining Company, S. A., and the Santa Domingo Mining Company, S. A., corporations organized and existing under the laws of the Republic of Mexico, with offices in El Paso county, Tex., and doing business in the state of Texas, sought recovery against said defendants on the following alleged cause of action:

That during the lifetime of Benito Colonna he entered into a contract with the defendant, known as a declaration of trust of the North Mexico Mining Company of Mexico, an unincorporated trust estate, which was a partnership agreement, and provided that, in consideration of services rendered and to be rendered and for the transfer of whatever rights he had in certain mining claims in the republic of Mexico and other considerations, the said Benito Colonna was to have an undivided one-tenth interest in and to all assets of said company and of its successors; that said trust agreement was made for the purpose of beginning the exploration of mines in Mexico, provided for the organization of a corporation under the laws of Mexico, and was merely temporary for the purpose of interesting others in the financing of said mining operations, but that said one-tenth interest should be and remain the property of said Benito Colonna.

It was alleged that, for the purpose of carrying out the terms of said trust agreement, the North Mexico Mining Company, S. A. (No. 1), was organized with a capital stock of 50,000 pesos and Colonna subscribed for and had an interest therein of two hundred shares of the value of 25 pesos each or 5,000 pesos, or $2500 American gold.

The articles of incorporation require the corporation to have its principal office at Ciudad Juarez in the state of Chihuahua, with the right to establish branch offices and agencies in any part of the republic of Mexico or foreign countries, fix the duration of the corporation at the term of fifty years and the capital stock in the amount of 50,000 pesos, national gold, represented by two thousand shares, each share having a value of 25 pesos, and being subscribed by the charter members in the following manner: Mr. Benito Colonna, two hundred shares, or 5,000 pesos; Mr. Tsutomu Dyo, seven hundred shares, or 17,500 pesos; Mr. Tomomichi Makana, six hundred sixty shares, or 16,500 pesos; Mr. Shinobu Ogawa, one hundred forty shares, or 3,500 pesos; Mr. Masaki Susuki, two hundred shares, or 5,000 pesos; and Mr. Ihei Kasai, one hundred shares, or 2,500 pesos.

The charter contains the following recitals: "Said charter members exhibited the total value of their shares, with the exception of Mr. Benito Colonna, who, with the consent of his co-partners, assigns and transfers in favor of the company, in payment of the value of his shares, his rights to denouncements of the mining properties known as 'La Palestina' with an area of two hectares, and situated in the Municipality of La Ascencion, Galeana District, State of Chihuahua, 'Australia' and 'Anahuac,' with an area of twenty hectares each, situated in Morelos District, in said State of Chihuahua, in order that the company may follow said denouncements to termination and acquire for itself the titles thereto, so that the same may be developed for the benefit of all the organizers in the proportion that each one represents. Mr. Shinobu Ogawa, in his capacity as Treasurer ad interim, appointed in this instrument, declares having received, and now in his possession, the sum of forty-five thousand pesos, national gold, for the use and needs of the corporation, and that said sum is the value of the subscribed and paid shares having been paid in cash by the said parties, with the exception of Mr. Benito Colonna. All the shares confer on the holders equal rights and exact the same obligations." And provides for the first general meeting of stockholders to be held in Ciudad Juarez on June 10, 1923, at which "the persons recognized as stockholders shall be those named in this instrument as parties thereto, with the number of shares to which each one has subscribed."

The by-laws, properly protocolized, under article 10, fixed the rights, among others, of stockholders at "(a) Ownership in the social assets, and the distribution of profits and dividends in proportion to the shares owned, and (e) Receive, in case of the liquidation of the Company, the proportional part corresponding to them by reason of the shares owned, in the net credits."

It was then alleged that the interest of said Colonna was at all times recognized in said corporation as the holder of 200 shares of its said capital stock, but afterwards, on November 17, 1925, the individual defendants herein organized the North Mexico Mining Company, S. A. (No. 2), with a capital stock of 3,000,000 pesos, which was combined with the Sabinal Mining Company, that the assets of the North Mexico Mining Company No. 1

were taken in and recognized in said reorganization at a valuation of 2,000,000 pesos or two-thirds of the capital stock of North Mexico Mining Company No. 2; that on or about January 12, 1926, Benito Colonna became sick and died, whereupon the defendant North Mexico Mining Company No. 2 refused to recognize his interest and to issue him any stock therein, but thereafter transferred 600,000 pesos worth of assets to the Santo Domingo Mining Company.

It was alleged, also, that the defendants Dyo and Kishi have at all times been the president, vice president, and general manager, in full and complete control of all said corporations, and have at all times, in connection with others, assisted in the fraud and deceit in preventing said Colonna and his estate from participating in any of the assets, dividends, rights, or privileges as a stockholder and part owner in said company.

It was further alleged that there have been sold from mines of the company located in the state of Chihuahua ore of the value of $750,000 American gold, of which he is entitled to a one-tenth interest; that he is entitled to have transferred to him upon the books of the company his said interest in said corporation, now worth $75,000.

Intervener's prayer was for an accounting of the profits, his interest therein alleged to be $75,000, and judgment directing issuance to him of said stock claimed, or in lieu thereof, for its value in the sum of $75,000.

The defendants answered by general demurrer, general denial, and specially denied the existence of any partnership as alleged by intervener or the performance of any services by Colonna for which he was to receive any stock or compensation, or that he had any right, title, or interest in any mining claims in the Republic of Mexico, of any value. It was further alleged in defendants' answer that said Colonna fraudulently misrepresented the facts to them in that he did not legally locate or denounce the said mining claims, all of which were denied by the proper Mexican authorities, and therefore his claim of ownership of two hundred shares of stock in the North Texas Mining Company, S. A. No. 1, was never recognized by the defendants and in truth and in fact he "got nothing and was entitled to nothing by virtue of any transfer of any rights of his or through the issuance of any stock of such corporation."

The defendants further pleaded as res judicata a suit brought by Mrs. Flavia Cisneros Vda de Colonna, as executrix of the estate of Benito Colonna, in the civil courts of Mexico, but this plea seems not to have been insisted on; it is not referred to in the trial court's findings and conclusions, nor in the assignments of error to the Court of Civil Appeals.

Trial was had before the court without a jury, and resulted in a judgment denying any recovery to the original plaintiffs, but in favor of intervener against the defendants (except the Santo Domingo Mining Company) in the sum of $40,000.

The Court of Civil Appeals, on the ground that Colonna, regardless of his good faith at the time of the organization of North Mexico Mining Company No. 1, had no rights in the claims which he contracted to assign to said company, and there was no consideration to support the transfer by him of an interest therein, reversed the trial court's judgment and rendered judgment that said intervener take nothing. 30 S.W.(2d) 381; 31 S.W.(2d) 1093.

The trial court filed findings of fact, in effect, supporting the allegations in the petition as to the organization of the first mining company under the laws of Mexico in which Colonna was an incorporator with a one-tenth interest, for which he assigned to the company certain rights to the denouncement of certain mining properties as stated in said charter, which all parties knew all about and the conditions surrounding the same; that said company was dissolved on October 16, 1925, without having distributed any of its assets, and while Colonna was still a member thereof with his original interest, which he had never transferred or otherwise disposed of; that his certificates of ownership, or shares in the company, were withheld from him and without his authority put to the credit of or in possession of others, who appeared to be holding said shares at the time of the dissolution of the company; the company had acquired various mining claims in Chihuahua, Mexico, among which was one called the "Magda" and which prior to November, 1925, proved to be very valuable; the value of the assets, less its liabilities of said company No. 1, at the time of its dissolution, was $400,000 gold, that is to say, money of the United States.

The trial court found further that on or about the same date the first company was dissolved, all of its assets were transferred to a new company with a capitalization of 3,000,000 pesos, called the North Mexico Mining Company, S. A. No. 2, in the formation of which the assets of the first company constituted two-thirds of the assets of the new company and the assets of the Sabinal Mining Company one-third; the assets of the Sabinal Mining Company were taken in at a valuation of 1,000,000 pesos and the assets of the North Mexico Mining Company No. 1 at a valuation of 2,000,000 pesos, the latter made up as follows: The Magda Mining claim of six hectares, 1,000,000 pesos; the Consuelo Mining Claim, with an area of twenty hectares, 500,000 pesos; the mining claim "Palestina," 400,000 pesos; machinery, ore in transit, etc., 100,000 pesos.

The trial court's conclusion of law was: "That, inasmuch as Colonna was a stockholder of Company No. 1 at the time of its dissolution, and entitled to one-tenth of its net assets, the transfer to, and acceptance of, the North Mexico Mining Company No. 2 was a conversion of the same, and, inasmuch as the incorporators of Company No. 2 participated in such conversion, Company No. 2 and the incorporators thereof are liable for such conversion."

## Opinion.

■ If, as found by the trial court, the consideration for which the incorporators of company No. 1 gave Colonna the stock in question was the transfer by him to the company of his rights to the denouncement of certain mining properties described in the company's charter, and the conditions surrounding the same, which all parties knew all about, then the company bargained for and acquired only the expectancy or chance of Colonna to so acquire said claims, which he did not warrant or guarantee. There was no mutual mistake or fraud or failure on the part of Colonna to perform his part of the contract. The charter of the company shows that, with the consent of his co-incorporators, he assigned his rights to denouncements of certain mining properties, in order that the company may follow said denouncements to termination and acquire for itself the titles thereto. It was a closed transaction—Colonna parted with his rights to denounce the claims, whatever they were, the company accepted his transfer thereto, and conceded to him two hundred shares of stock.

It appears from the record that the company did attempt to denounce the claims in Colonna's name, but they were refused by the Mexican authorities; it appears from the testimony of the government mining agent that Colonna prior to such refusal claimed the right to denounce the claims and attempted to do so.

A denouncement is an application for the acquisition of land for mining purposes, under certain rules prescribed by Mexican law. The application is called the denouncement, and, when approved by the government, is called "concession" or "title"—sometimes "patent." It is then a grant given by the government to use the land applied for, for the purpose of mining, and is called the "title."

It appears from the testimony of a duly qualified Mexican lawyer that, under the present laws of Mexico, it is now necessary to obtain a permit to prospect, but that was not the law in 1923 when all that was necessary to be done "was to go out and prospect. If one found a claim that he believed to be good he could transfer that to another for a consideration." He testified further (though this is challenged by the testimony of another duly qualified Mexican lawyer) that the purported transfer by Colonna was sufficient and binding, and this is the effect of the trial court's findings.

All parties pleaded certain provisions of Mexican law, and, while they disagree in the verbiage, there is no substantial difference in the translations. We therefore quote said provisions, as pleaded by defendants in error:

"Art. 2806. A contract which has for its object the purchase of the future fruits of a thing or the uncertain products of an act which can be estimated in money is called a purchase of expectations."

"Art. 2808. If the seller executes the act by agreement with the purchaser, he shall have a right of action to collect the price whether the product is obtained or not, provided the execution of the act has been performed on the agreed terms.

"Art. 2809. In the purchase of expectations the risk of the thing will always be on the purchaser's account.

"Art. 2810. All other rights and obligations of the parties, in the purchase of expectations, shall be which are determined in the title or purchase and sale."

■ The transfer from Colonna was only a quitclaim and without warranty, and the company acquired only his chance of a title; this is manifest from the face of the instrument as reflecting the intent of the parties. Whether an instrument is a quitclaim or not depends upon the intent of the parties to it as that intent appears from the language of the instrument itself. Cook v. Smith, 107 Tex. 119, 174 S. W. 1094, 3 A. L. R. 940; Garrett v. Christopher, 74 Tex. 453, 12 S. W. 67, 15 Am. St. Rep. 850; Tram Lumber Co. v. Hancock, 70 Tex. 312, 7 S. W. 724; Leal v. Leal (Tex. Com. App.), 14 S.W.(2d) 797; Louisiana & Texas Lumber Co. v. Southern Pine Lumber Co. (Tex. Civ. App.), 171 S. W. 537 (writ of error refused).

■ There being no ambiguity in the language used, the instrument must be held to be a quitclaim and the party claiming under it occupies no better position than his grantor. Threadgill v. Bickerstaff, 87 Tex. 520, 29 S. W. 757.

So, the company, having acquired the rights of Colonna, acquired what he bargained to convey, and, having conceded Colonna's interest in the company, in consideration therefor, the contract was fully performed on both sides, and the company is bound. 14 Tex. Jur. pp. 802, 808.

■■ If the parties got that which they bargained for and were not acting under mistake, fraud, or the like, the courts do not concern themselves with the relative values exchanged or the wisdom of the contract (1 Elliott on Contracts, § 209), and, if the contract has been fully performed and executed,

the question of consideration or its sufficiency is immaterial and affords no ground for its rescission (Id., § 202; 1 Page on Contracts, § 540), although enforcement of the contract could have been resisted, while it was executory. (1 Page on Contracts [Sup.] § 540; King v. Bank, 150 Ark. 138, 233 S. W. 920; Sooy v. Winter, 188 Mo. App. 150, 175 S. W. 132, 134, noted in 13 C. J. 314). To quote from the latter case: "If one makes an executory contract which lacks a consideration, he may avoid it when called upon for performance. But if he chooses to execute the contract by performance, there is nothing to hinder his doing so, and he cannot turn round and seek to undo his voluntary act."

All parties knew the conditions of the mining claims, and they were accepted in that manner; Colonna nowhere guaranteed the titles thereto, and of course, in the absence of such guaranty, either contractual or imposed by law, cannot be bound as of a guaranty. Savoy v. Brewton, 3 Tex. Civ. App. 336, 22 S. W. 585; McIntyre v. De Long, 71 Tex. 86, 8 S. W. 622; 35 Cyc. 537; 7 Tex. Jur. 938.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.