

# NUMBER 13-13-00462-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ORCA ASSETS, G.P., L.L.C.,                                    Appellant,

v.

BURLINGTON RESOURCES OIL AND GAS
COMPANY, L.P., PETROHAWK PROPERTIES, L.P.,
AND GEOSOUTHERN DEWITT PROPERTIES, L.L.C.,          Appellees.

### On appeal from the 267th District Court
### of De Witt County, Texas.

# MEMORANDUM OPINION ON REHEARING

### Before Justices Garza, Benavides and Perkes
### Memorandum Opinion by Justice Garza

We issued our original memorandum opinion in this case on August 26, 2014. Appellant, Orca Assets G.P., L.L.C. ("Orca"), filed motions for rehearing and for en banc reconsideration. *See* TEX. R. APP. P. 49.1, 49.7. We deny the motion for rehearing but withdraw our prior memorandum opinion and judgment and substitute the following

memorandum opinion and accompanying judgment in their place.[1]

Appellees, Burlington Resources Oil and Gas Company, L.P. ("Burlington"), Petrohawk Properties, L.P. ("Petrohawk"), and GeoSouthern DeWitt Properties, L.L.C. ("GeoSouthern") sued Orca in a dispute over competing oil and gas leases in DeWitt and Gonzales Counties, Texas. The trial court rendered summary judgment in favor of appellees, finding that the conveyances granted to them were superior in title and rights to Orca's leases. We affirm.

## I. BACKGROUND

The Red Crest Trust (the "Trust") owns tens of thousands of acres of mineral interests across the Eagle Ford Shale in south Texas. On June 17, 2010, the Trust, by its trustee JPMorgan Chase Bank, N.A. ("Chase"), entered into a lease agreement under which it leased the mineral rights to fifteen different tracts of land, covering 1,811 acres, to GeoSouthern. Later, GeoSouthern assigned a portion of its interest in that lease to Petrohawk, and Petrohawk assigned part of its interest to Burlington. GeoSouthern recorded a "Memorandum of Oil and Gas Lease" (the "GeoSouthern Memorandum") in the public records of DeWitt County on December 9, 2010.

Before the GeoSouthern Memorandum was recorded, on December 6, 2010, Chase, as trustee of the Trust, and Orca executed a "Letter of Intent" concerning mineral interests to fifteen tracts of land, ten of which were the same as those previously leased to GeoSouthern. The Letter of Intent stated, in relevant part, as follows:

> 1. [Orca] has caused a search to be made of the records of Karnes and DeWitt Counties and has preliminarily determined that [the Trust] is the

---

[1] Because we have made changes to the opinion, Orca's motion for en banc reconsideration is denied as moot. *See Poland v. Ott*, 278 S.W.3d 39, 41 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding that a motion for en banc reconsideration should be denied as moot when the panel denies a motion for rehearing but issues a new opinion and judgment).

2

owner and holder of the mineral estate underlying the [subject properties] . . . which lands [Orca] has further determined to be free of any recorded oil and gas lease heretofore executed the rightful owner thereof;

2.      [Orca] has heretofore offered [the Trust] a consideration of $3,500 per net mineral acre owned by [the Trust] for separate leases covering the land above described, such lease to be in all matters, except the land description and date thereof, like, and on the form heretofore employed by them on other acreage recently leased by [the Trust] to [Orca], specifically a lease covering 258.1 acres in the Pickett Survey in Karnes County, Texas, Memorandum of which is recorded in Volume 945, Page 426 of the Official Records of Karnes County, which [the Trust] has accepted, provided, however, that [the Trust] has stated that the form to be employed for the leasing of the acreage that is the subject of this agreement shall be modified by deleting paragraph 18 previously appearing thereon and substituting therefor, the following new paragraph 18, to wit:

> 18.      Negation of Warranty.  This lease is made without warranties of any kind, either express or implied, and without recourse against Lessor in the event of a failure of title, not even for the return of the bonus consideration paid for the granting of the lease or for any rental, royalty, shut-in payment, or any other payment now or hereafter made by Lessee to Lessor under the terms of this lease.

3.      [Orca] has accepted the counteroffer of [the Trust] proposing to modify paragraph 18 of the form to be used for the leasing of the land above described, (provided that it is clearly understood that such modification applies to the lands affected by this letter agreement and not to the 458.1 acres above-mentioned or to any other land previously leased by [the Trust] to [Orca]) but, in light of such requested modification to the lease form has requested, and [the Trust] has agreed to, a delay of up to 30 calendar days in the closing of the proposed transaction to allow [Orca] the opportunity to re-examine its title work upon which its determination of ownership is based, such 30 calendar day period to commence upon the execution of this agreement as reflected in the first paragraph hereof.

4.      In consideration of the facts above stated and the payment of an earnest money consideration paid by [Orca] to [the Trust] of FIFTY DOLLARS ($50) for each acre of the land above described, [Orca and the Trust] acknowledge, and hereby confirm, that they have a firm agreement to complete the leasing transaction herein contemplated, it being understood that such transaction may be closed on a piecemeal basis, that is to say, as the title to the individual tracts is examined and approved, [Orca] may tender the balance of the $3,500 per acre consideration for a lease thereon and [the Trust] shall execute and deliver to [Orca] such lease, provided that all title examination must be concluded, and consideration on

3

all tracts tendered, on or before the end of [the] thirty-day period allowed under agreement. In the event that such re-examination of title should reveal information to [Orca] heretofore unknown to it about one or more tracts above described that brings into question the ownership of [the Trust] therein, it may, in its sole and absolute discretion, elect to not take a lease on such tract or tracts and such tract or tracts shall be treated as if never a part of this agreement. If any such determination is made, the portion of earnest money hereby tendered and attributable thereto shall be credited to the rest of the land remaining covered hereby.

The Letter of Intent was signed by a Chase representative and an Orca vice-president. Pursuant to the Letter of Intent, Orca made an earnest money payment of over $84,000 on December 8, 2010.

Orca executed leases on the subject properties[2] as contemplated in the Letter of Intent in early January of 2011. Despite the fact that the Letter of Intent provided for a thirty-day period during which it could "re-examine its title work," Orca did not check the DeWitt County property records, either before or after December 6, 2010, to determine if the properties were subject to other leases. Orca's landman, Tony Villalon, who drafted the Letter of Intent, provided the following deposition testimony:

I wrote the [Letter of Intent] with the intent of having a binding agreement to the extent that equitable title would pass to Orca at that point. And I felt no need for there to be any further scrutiny of title. We had a deal with them at that point.

Orca paid the Trust over $3 million on January 11, 2011 and memoranda of the leases (the "Orca Memoranda") were recorded on January 12, 2011.

Burlington filed the instant lawsuit asserting claims of trespass to try title, suit to quiet title, and declaratory judgment against Orca arising out of Orca's assertion of rights in the subject properties. Petrohawk and GeoSouthern intervened in the suit, asserting

---

[2] Orca exercised its option to not lease some of the tracts specified in the Letter of Intent. Orca did not, however, opt out of any of the ten tracts covered by the GeoSouthern lease.

similar claims against Orca, and Orca counterclaimed asserting its claim to the property. Appellees filed motions for summary judgment[3] and Orca filed a response to which it attached evidence. Appellees objected to some of Orca's summary judgment evidence. The trial court granted appellees' objections to the evidence and their motions for summary judgment.[4] The final judgment declared that appellees' rights to the subject properties are superior to Orca's and it ordered that Orca take nothing by way of its counterclaim. This appeal followed.

## II. DISCUSSION

Orca argues by one issue on appeal that the trial court erred in granting appellees' traditional motions for summary judgment. Specifically, Orca argues that it was a bona fide purchaser of the subject properties and that, therefore, the conveyance by the Trust to GeoSouthern was void. *See* TEX. PROP. CODE ANN. § 13.001 (West, Westlaw through 2013 3d C.S.).

### A. Standard of Review

We review summary judgments de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004); *Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied). We

---

[3] Several motions for summary judgment appear in the record, including motions for traditional summary judgment filed by each appellee, a motion for no-evidence summary judgment filed by Burlington, and a joint motion for traditional summary judgment on Orca's bona fide purchaser defense. The trial court's final judgment does not specify which of these motions was granted. However, because Orca only argues its bona fide purchaser defense on appeal, we will only consider the various motions to the extent that they concern that defense. We note that Burlington's no-evidence motion contends only that there was no evidence supporting Orca's claim for money damages; it does not claim that there was no evidence to support the bona fide purchaser defense. Accordingly, we do not address the no-evidence motion.

[4] Orca also filed traditional and no-evidence motions for summary judgment on its counterclaims. The trial court implicitly denied those motions when it ordered in its final judgment that Orca take nothing. Orca does not contend on appeal that the trial court erred in denying those motions.

take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Joe*, 145 S.W.3d at 157.

In advancing a traditional motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Joe*, 145 S.W.3d at 157. But "[i]f the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment." *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). An issue of fact is raised if more than a mere scintilla of evidence is produced. *See, e.g., City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). Evidence is less than a scintilla is if it is "so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Regal Fin. Co.. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010). Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011).

## B. Applicable Law

The longstanding general rule in Texas is that "earlier title emanating from [a] common source is the better title and is given prevailing effect." *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 769 (Tex. 1994) (citing *Curdy v. Stafford*, 30 S.W. 551, 552 (Tex. 1895)). However, "[s]tatus as a bona fide purchaser is an affirmative defense to a title dispute." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). To qualify as a bona fide purchaser, "one must acquire property in good faith, for value, and without notice of any third-party claim or interest." *Id.*; *see Swanson v. Grassedonio*, 647 S.W.2d 716, 718

6

(Tex. App.—Corpus Christi 1982, no writ). Notice may be constructive or actual; actual notice rests on personal information or knowledge, whereas constructive notice is notice the law imputes to a person not having personal information or knowledge. *Madison*, 39 S.W.3d at 606. The bona fide purchaser doctrine is codified in section 13.001 of the Texas Property Code, entitled "Validity of Unrecorded Instrument," which states:

> (a)   A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.
>
> (b)   The unrecorded instrument is binding on a party to the instrument, on the party's heirs, and on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.
>
> (c)   This section does not apply to a financing statement, a security agreement filed as a financing statement, or a continuation statement filed for record under the Business & Commerce Code.

TEX. PROP. CODE ANN. § 13.001. "An instrument that is properly recorded in the proper county is: (1) notice to all persons of the existence of the instrument; and (2) subject to inspection by the public." *Id.* § 13.002 (West, Westlaw through 2013 3d C.S.).

**C.    Analysis**

The motions for traditional summary judgment filed by appellees were accompanied by, among other evidence, the GeoSouthern Memorandum, the Orca Memoranda, and the assignment agreements applicable to each appellee. The memoranda show that the conveyances to both GeoSouthern and Orca emanated from the Trust. This evidence was sufficient to show appellees' entitlement to judgment as a matter of law because it established that appellees had "earlier title emanating from [a] common source." *Rogers*, 884 S.W.2d at 769; *see* TEX. R. CIV. P. 166a(c). The only

7

question on appeal, therefore, is whether Orca raised a fact issue as to its bona fide purchaser defense.  *See Brownlee*, 65 S.W.2d at 112.

The parties do not seem to dispute that Orca paid valuable consideration for the rights conferred in the Letter of Intent, nor do they dispute that Orca lacked actual or constructive notice of the GeoSouthern lease as of the date the Letter of Intent was executed.  The dispute instead centers on whether the Letter of Intent constitutes an "acquisition of property" such that the bona fide purchaser defense would apply.  *See Madison*, 39 S.W.3d at 606.  In response to appellees' joint motion for traditional summary judgment, Orca produced evidence including the Letter of Intent, which it claims constituted a conveyance of equitable title to the subject properties.[5]  Appellees disagree with Orca that the Letter of Intent conveyed any sort of property interest, and they further argue that the language of the Letter of Intent precludes Orca from claiming bona fide purchaser status.

We agree with appellees on the latter point.  Even assuming, but not deciding, that the Letter of Intent conveyed an equitable interest in the subject properties to Orca, that instrument explicitly stated in paragraph 2 that no warranty of title would be provided in any lease eventually executed pursuant thereto.  In that regard, to the extent the Letter of Intent conveyed any interest in the subject properties, it was equivalent to a quitclaim deed under which the purchaser agrees to acquire whatever interests are actually owned

---

[5] The parties disagree whether, in general, the acquisition of equitable title entitles a party to claim bona fide purchaser status.  *Compare Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (stating that, to be a bona fide purchaser, "one must acquire property," but not distinguishing between legal and equitable title) *with Swanson v. Grassedonio*, 647 S.W.2d 716, 718 (Tex. App.—Corpus Christi 1982, no writ) (noting that "[a] bona fide purchaser is one who acquires (apparent) *legal title* to property in good faith for a valuable consideration without actual or constructive notice of an infirmity in the title" (emphasis added)).  We do not address this issue because, even if equitable title is generally sufficient to allow a grantee to claim bona fide purchaser status, the language of the Letter of Intent nevertheless precluded Orca from asserting such status.  *See* TEX. R. APP. P. 47.1.

8

by the seller. *See Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 486 (Tex. 2005) ("A warranty deed to land conveys property; a quitclaim deed conveys the grantor's rights in that property, if any."); *see also* BLACK'S LAW DICTIONARY 477 (9th ed. 2009) (defining quitclaim deed as "[a] deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid"). And, courts have long held that a party acquiring property under a quitclaim deed is not eligible to claim bona fide purchaser status because it is charged with notice of title defects as a matter of law. *See Woodward v. Ortiz*, 237 S.W.2d 286, 291–92 (Tex. 1951) (holding that a purchaser of property under a quitclaim deed "cannot enjoy the protection afforded a bona fide purchaser" because "he takes with notice of all defects in the title and equities of third persons"); *Bright v. Johnson*, 302 S.W.3d 483, 492 (Tex. App.—Eastland 2009, no pet.) ("[A] subsequent purchaser is not a bona fide purchaser if the conveyance is made without warranty."); *Kidwell v. Black*, 104 S.W.3d 686, 691 (Tex. App.—Fort Worth 2003, pet. denied) ("The purchaser of a quitclaim deed takes the deed with notice of all defects in the title and equities of third persons. Because [appellant] is the grantee of a quitclaim deed, he cannot be a bona fide purchaser."); *Diversified, Inc. v. Hall*, 20 S.W.3d 403, 406 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("As the purchaser of a quitclaim deed, [appellant] cannot enjoy the protections afforded a bona fide purchaser, because a grantee in a quitclaim deed is not an innocent purchaser without notice."); *Equitable Trust Co. v. Roland*, 721 S.W.2d 530, 534 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.) ("[A] grantee in a quitclaim deed is not an innocent purchaser, but takes with notice of all defects in his grantor's title"); *see also Houston Oil Co. of Tex. v. Niles*, 255 S.W. 604, 610 (Tex. Comm'n App. 1923, judgm't adopted) ("[T]he

9

holder of a title in which there appears, however remote, a quitclaim deed is prevented from asserting the defense of innocent purchaser as against an outstanding title or secret trust or equity existing at the time the quitclaim deed was executed.").

In its motion for rehearing, Orca contends that a disclaimer of warranty "does not transform an instrument into a quitclaim deed." In support of this contention, Orca cites three nineteenth-century Texas Supreme Court cases which held that a party was entitled to bona fide purchaser status despite the absence of warranty of title. *See White v. Dupree*, 40 S.W. 962, 964 (Tex. 1897); *Richardson v. Levi*, 3 S.W. 444, 447 (Tex. 1887); *Taylor v. Harrison*, 47 Tex. 454, 461 (1887). These cases, however, merely stand for the proposition that the absence of warranty of title will not *by itself* preclude bona fide purchaser status. *See White*, 40 S.W. at 964 ("[W]hile a warranty may be looked to in order to determine whether the grantee may be an innocent purchaser or not, it is by no means conclusive."); *Richardson*, 3 S.W. at 448 (examining the language of the deed and concluding that the use of the word "quitclaim," under those circumstances, did not "restrict it so as to make it upon its face convey no more than the interest of the grantor in the property"); *Taylor*, 47 Tex. at 461 (noting that whether a deed is a quitclaim "is not to be determined merely by an omission of the covenant of general warranty of title, but may be inferred not only from the terms of the deed, but from the adequacy of the price given, and other circumstances attending the transaction calculated to show the real intent and purpose of the instrument").

Orca also cites a more recent case, *Chesapeake Exploration, L.L.C. v. Valence Operating Co.*, in which a federal district court held that "an exclusion of warranty cannot, by itself, convert a deed in fee simple to a quitclaim deed." No. H-07-2565, 2008 WL

4240486, at *8–9 (S.D. Tex. Sept. 10, 2008). In that case, the court held that the lease at issue was not a quitclaim because, even though it contained a negation of warranty, the negation of warranty was not included in the habendum clause of the lease. *Id.* at *8. The court reasoned that "[a] warranty is a separate covenant from the grant. It is not part of the conveyance . . . [.] It is a contract on the part of the grantor to pay damages in the event of failure of title." *Id.* (citing *Bass v. Harper*, 441 S.W.2d 825, 827 (Tex. 1969)). On the other hand, the Letter of Intent at issue here did not even contain a habendum clause; that is, it did not contain any language separate from the negation of warranty that could be interpreted as a conveyance of property. Accordingly, the distinction made in *Chesapeake* is not applicable to this case.

In any event, the courts appear to agree that, "in deciding whether an instrument is a quitclaim deed, courts look to whether the language of the instrument, taken as a whole, conveyed property itself or merely the grantor's rights." *Id.*; *Geodyne Energy*, 161 S.W.3d at 486. "Whether an instrument is a quitclaim or not depends upon the intent of the parties to it as that intent appears from the language of the instrument itself." *Chesapeake*, 2008 WL 4240486, at *8 (citing *Winningham v. Dyo*, 48 S.W.2d 600, 603 (Tex. 1932)). "In other words, the key to the inquiry is: what did the lessor *intend to convey.*" *Id.* (emphasis in original). Here, considering the unequivocal language of the entire Letter of Intent, we are left with no doubt that the parties intended to convey, if anything, "merely the grantor's rights" in the specified properties. *See id.* Accordingly, it is equivalent to a quitclaim deed for purposes of our analysis.

11

We therefore conclude that Orca did not raise a fact issue as to its status as a bona fide purchaser and that the trial court did not err in granting summary judgment in favor of appellees. Orca's issue is overruled.[6]

### III. CONCLUSION

We affirm the judgment of the trial court.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
15th day of January, 2015.

---

[6] Orca additionally argues in its brief, by an unenumerated issue, that the trial court erred in granting appellees' objections to some of Orca's summary judgment evidence. However, in reaching our conclusion regarding the summary judgment ruling, we have considered all of the evidence in the record, including the evidence excluded by the trial court. Therefore, even if the trial court erred in excluding this evidence, the error would not be reversible. *See* TEX. R. APP. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals."). We reject this argument.