

# NUMBER 13-13-00702-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ENTRAVISION COMMUNICATIONS CORPORATION
AND MARIANELE AGUIRRE,**                                    **Appellants,**

**v.**

**JESUS EVERARDO VILLARREAL SALINAS,**                      **Appellee.**

---

**On appeal from the 398th District Court
of Hidalgo County, Texas.**

---

# OPINION

**Before Chief Justice Valdez[1] and Justices Rodriguez and Longoria
Opinion by Justice Rodriguez**

This is an interlocutory appeal of a denial of a motion to dismiss filed pursuant to

the Texas Citizens Participation Act (TCPA or the Act), also known as the Anti-SLAPP

---

[1] Chief Justice Valdez, while hearing the case when it was submitted at oral argument, did not participate in this opinion. *See* TEX. R. APP. P. 41.1(a).

statute.[2]   *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West, Westlaw through 2015 R.S.).   By five issues, which we have reorganized, appellants Entravision Communications Corporation and Marianele Aguirre[3] (collectively Entravision) contend that the trial court erred:   (1–4) in denying their motion to dismiss brought pursuant to the TCPA; and (5) in not awarding attorney's fees, costs, and expenses to Entravision when appellee Jesus Everardo Villarreal Salinas non-suited defendants Entravision-Texas G.P. LLC (ETGP) and Entravision Holdings, LLC (EH) after the motion to dismiss was filed.[4] We reverse and remand.

## I.   BACKGROUND

Everardo, the Mayor of Reynosa, Mexico during all relevant times, and Arturo Villarreal Tijerina, Everardo's father,[5] filed suit against Entravision, ETGP, and EH, alleging defamation *per se* and defamation *per quod*.[6]   The basis for the suit arises out

---

[2] "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation."   *See In re Estate of Check*, 438 S.W.3d 829, 830 n.1 (Tex. App.—San Antonio 2014, no pet.).   This Anti-SLAPP statute permits defendants targeted by SLAPP suits to move for dismissal if the action relates to the defendant's exercise of the right of free speech, right to petition, or right of association.   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003 (West, Westlaw through 2015 R.S.); *see also Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *1 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op. on reh'g).

[3] Jesus Everardo Villarreal Salinas sued Marianele Aguirre as the News Director and Anchor at KNVO-TV Channel 48.

[4] Entravision-Texas G.P. LLC and Entravision Holdings, LLC are not parties to this appeal.

[5] Arturo Villarreal Tijerina is not a party to this appeal.

[6] Everardo and Arturo amended their petition to include Univision Radio Corporation, Viva Communications, Inc., Raul Brindis, Univision Radio Houston License Corporation (the Univision defendants), and Antonio Gallegos Gonzalez as defendants.   They asserted that these defendants published a defaming news story about them.   The Univision defendants filed a motion to dismiss the lawsuit pursuant to the Texas Citizens Participation Act (TCPA).   *See generally* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West, Westlaw through 2015 R.S.).   Before the trial court heard this motion to dismiss, Arturo and Everardo reached a settlement with the Univision defendants, and consistent with the settlement agreement, the trial court issued an order dismissing the Univision defendants from the lawsuit with prejudice.   Defendant Gonzalez did not file a motion to dismiss and is not a party to this appeal.

of a statement posted on May 17, 2013 by Entravision on the Facebook page of Noticias 48, a television media outlet.[7]   The Facebook post, translated from Spanish to English by a Texas Master Court Interpreter, reads as follows:

> Architect Arturo Villarreal, father of the Mayor of Reynosa, Tamps. Everardo Villarreal Salinas,—according to Unofficial sources—Was Arrested with a Very Important Sum of Money, here [in] the Rio Grande Valley, More details at 5:00 o'clock pm.   We'll be waiting for you.[8]

A picture of Arturo and Everardo appeared below the subject post.

Entravision answered, generally denying the claims against it.   Entravision also asserted affirmative and other defenses, including the following:   (1) "[t]he statement(s) at issue are privileged as a reasonable and fair comment on a matter of public concern published for general information"; (2) the "claims are barred because Plaintiffs are public

---

[7] Everardo complains only of the first May 17th Facebook post that he refers to as the "subject statement."   We note that the same day Entravision posted a second statement on Facebook, which when translated from Spanish to English reads as follows:

> Strong rumors are going around in the social media about the alleged arrest of Architect Arturo Villarreal, Father of the Mayor of Reynosa Tamaulipas, Everardo Villarreal Salinas. The rumors indicate that he was arrested with a Very Important Sum of Money here [in] the Rio Grande Valley.   Noticias 48 is investigating and trying to contact a spokesperson for the family or the Mayor's Office in Reynosa, to clarify the facts or deny them, if such is the case.

The subject post and this second post were deleted from the Facebook page approximately five days later. And on July 2, 2013, Noticias 48 issued a follow-up statement setting out that "[t]he information contained in [the May Facebook posts] may not be accurate or valid" and that "[a]lthough Noticias 48 deems that the Facebook publication of May 17, precisely indicates that there were rumors, Noticias 48 believes now that no arrest of Arturo Villarreal Tijerina has occurred.   Arturo Villarreal Tijerina has also denied that he had been arrested."

[8] In its appellate reply brief, Entravision set out the following translation for this Facebook post:

> Arturo Villarreal, Architect, father of Reynosa Tamaulipas Mayor Everardo Villarreal Salinas, according to unofficial sources, was *detained* here in the Rio Grande Valley with a very *large amount* of money.   More details at 5:00 p.m. sharp.   We expect you.

(Emphasis added.)   Entravision offers no record cites for this translation or for its accuracy, and we find none.

3

officials or public figures"; and (3) the "claims are barred and subject to dismissal by the [TCPA] . . . . The purpose of the [TCPA] is to encourage and safeguard the constitutional rights of persons to speak freely to the maximum extent permitted by law."

Entravision, ETGP, and EH subsequently filed a motion to dismiss, asserting that (1) the lawsuit fell within the protection of the Anti-SLAPP statute; and (2) Everardo could not establish a prima facie case for defamation as required by the TCPA. *See id.* § 27.003. The motion argued that Everardo was not entitled to bring a defamation suit because the allegedly defamatory statement concerned Everardo's father and not Everardo. The motion did not seek to dismiss Arturo's claim.

After the filing of the motion to dismiss, Everardo and Arturo filed a motion to non-suit ETGP and EH. The trial court granted that motion and dismissed ETGP and EH with prejudice.

Everardo then responded to Entravision's motion to dismiss arguing, in part, the following:

> [t]he obvious reality is that the only sensational and scintillating aspect of this story is that the person arrested with all that unexplained money is the father of Reynosa's Mayor, who must have had some illicit role in obtaining the money. The gist of the story is clear and was clear to its readers. The gist of the story is false. It is about the Mayor. It is defamatory.

The trial court held a hearing on the merits of the remaining portion of the motion to dismiss—the portion that concerned Everardo's claims against Entravision. The trial court effectively denied the motion to dismiss by operation of law, and Entravision filed this expedited appeal. *See id.* § 27.008(a–b).

4

## II.    THE TCPA

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* § 27.002.    The TCPA is to "be construed liberally to effectuate its purpose and intent fully," but it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." *Id.* § 27.011.

The TCPA provides a procedure for the expedited dismissal of "retaliatory lawsuits that seek to intimidate or silence them on matters of public concern." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding).    The Act provides that

> [a] two-step process is initiated by motion of a defendant who believes that the lawsuit responds to the defendant's valid exercise of First Amendment rights.    Under the first step, the burden is initially on the defendant-movant to show "by a preponderance of the evidence" that the plaintiff's claim "is based on, relates to, or is in response to the [movant's] exercise of:    (1) the right of free speech; (2) the right to petition; or (3) the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b).    If the movant is able to demonstrate that the plaintiff's claim implicates one of these rights, the second step shifts the burden to the plaintiff to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

*Id.*    And even if the nonmovant makes this showing, the trial court must dismiss the case if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).    When determining whether to dismiss the legal action, the court must

5

consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based."[9]   *Id.* § 27.006(a).

## III.   STANDARD OF REVIEW

"We consider de novo the legal question of whether the movant has established by a preponderance of the evidence that the challenged legal action is covered under the Act."   *Serafine v. Blunt*, ___ S.W.3d ___, ___, No. 03-12-00726-CV, 2015 WL 3941219, at *2 (Tex. App.—Austin June 26, 2015, no. pet. h.) (op. on reh'g) (citing *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), *disapproved on other grounds by In re Lipsky*, 460 S.W.3d at 587–88)).   "We also review de novo a trial court's determination of whether a nonmovant has presented clear and specific evidence establishing a prima facie case for each essential element of the challenged claims."   *Id.* (citing *Rehak Creative Servs.*, 404 S.W.3d at 726).

## IV.   APPLICABILITY OF TCPA—ENTRAVISION'S BURDEN

By its first issue, Entravision contends, as it did in the trial court, that it has satisfied the first step of the process by establishing by a preponderance of the evidence that Everardo's claim is "based on, relates to, or is in response to" Entravision's exercise of "the right of free speech."   TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b).   Entravision asserts that it exercised the right of free speech through the communication—the Facebook post—it "made in connection with a public concern," which included, in this

---

[9] A "pleading" is "a document containing the written allegations of fact that each party is required to communicate to the opponent before trial, so that each will know what contentions must be met by the evidence."   Garner, Bryan, A DICTIONARY OF MODERN LEGAL USAGE 667 (2nd ed. 1995).   "Examples of pleadings are complaints, petitions, counter-claims, and answers."   *Id.*

6

case, issues related to "community well-being; . . . the government; . . . [or] a public official or public figure." *Id.* § 27.001(3), (7); *see id.* § 27.001(1). In response, Everardo argues that the trial court properly denied the motion to dismiss because Entravision did not show that the suit related to a matter of public concern. *See id.* § 27.005(c).

**A.    Applicable Law**

The statute broadly defines "the exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). The statute defines "communication" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). Everardo does not dispute that the subject Facebook post was a "communication" under the statute. *See id.* The statute further defines a "matter of public concern" to include, among other things, issues related to the "environment, economic, or community well-being" and issues related to "a public official or public figure." *Id.* § 27.001(7)(B & D). Our determination of whether the communication was about a matter of public concern is dispositive of Entravision's first issue.

**B.    Discussion**

Entravision's motion to dismiss alleged that Arturo was a public figure as well as the father of Everardo and that Everardo was the Mayor of Reynosa, Mexico, at the time. Entravision also alleged in its motion that

> [t]he possibility that authorities had detained someone (in this case, [Arturo], a former secretary of urban development and public works for Reynosa who has also been involved in the chamber of commerce and other organizations in the city) with a large sum of money is certainly a matter of public concern.

7

To determine whether Everardo's lawsuit is related to the exercise of free speech under the broad language of the TCPA, we begin our de novo review by looking at the pleadings. *See id.* § 27.006(a), *Serafine*, 2015 WL 3941219, at *4. In his second amended original petition, Everardo set out the following background:

> Beginning on or after May 17, 2013, Defendants recklessly and maliciously published false and defamatory statements about Plaintiffs. Specifically, Defendants published news stories saying that Arturo Villarreal Tijerina had been detained with a large sum of money by law enforcement officials in the Rio Grande Valley. . . . Defendants knew that any reasonable person hearing or seeing these stories would conclude that Arturo Villarreal Tijerina was a criminal, a drug trafficker, and probably involved in corrupt and illegal political activity or connected to the Mexican drug trade. The Defendants' false and defamatory stories also pointed out gratuitously and specifically that Arturo Villarreal Tijerina was the father of The Honorable Jesus Everardo Villarreal Salinas, Mayor of Reynosa, Mexico. The stories included a photograph of the Mayor and his father taken in the past. The obvious and intended result was that The Honorable Jesus Everardo Villarreal Salinas would be defamed and branded by association as a corrupt and criminal politician or a criminal drug trafficker. . . . The Mayor was not involved in any criminal activity or corrupt political conduct.

Through his pleading, Everardo alleged that Entravision's suggestions of corruption and criminal drug trafficking, among other things, impacted his position of Mayor, specifically through the allegedly false statement that his father had a large amount of money in his possession when he was detained in the Rio Grande Valley. Everardo's pleading set out that the communication also pointed out that Arturo was the father of Everardo, the Mayor of Reynosa; included a photograph of Everardo and his father "taken in the past"; and asserted that the communication obviously intended to defame Everardo and brand him as a corrupt politician or a criminal by association. Entravision's answer also set out, among other things, that the statement at issue involved public officials or public figures.

8

It described the statement as a comment on a matter of public concern.

Considering the petition and the answer in this case, we conclude that Entravision made the communication at issue, as set out in the pleadings, in connection with a matter of public concern—specifically that it implicated concerns of community well-being or that it involved issues related to a public official or public figure. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(3), 27.001(7)(B & D). Entravision met its initial burden of showing that Everardo's defamation claims were based on, related to, or were in response to Entravision's exercise of the right of free speech, such that the TCPA applied to those claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(3), 27.001(7)(B & D), 27.005(b)(1); *In re Lipsky*, 460 S.W.3d at 586. We sustain Entravision's first issue to the extent the trial court denied Entravision's motion to dismiss on the basis that it failed to satisfy its burden.

Having determined that Entravision carried its initial burden and established that its claims are covered by the TCPA, the burden shifted to Everardo to present clear and specific evidence of a prima facie case for each element of his defamation claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *In re Lipsky*, 460 S.W.3d at 584.

## V. PRIMA FACIE CASE—EVERARDO'S BURDEN

By its second and third issues, Entravision contends that Everardo failed to establish a prima facie case by clear and specific evidence that the alleged statement was defamatory *per se* or *per quod,* as required by the TCPA. Elements of a defamation claim include (1) the publication of a false statement, (2) that defamed the plaintiff, (3) "with the requisite degree of fault[, actual malice if the plaintiff was a public official or

9

public figure or negligence if the plaintiff was a private individual], and (4) damages, in some cases [i.e., defamation *per quod*]." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015); *see Neely v. Wilson*, 418 S.W.3d 52, 61 (Tex. 2013).

Among other things, Entravision attacks the second element of Everardo's defamation claims by asserting that the trial court erred in denying its motion to dismiss because the allegedly false statement was not capable of a defamatory meaning as to Everardo. Entravision claims that the statement was not defamatory in Everardo's case because it was not about Everardo. In response, Everardo argues that "an ordinary person's perception of the subject statement entailed an inference that [Everardo] was involved in criminal wrongdoing" and "that this inference arose from a false allegation." In other words, Everardo asserts that the Facebook post was defamatory because it falsely implied that he was involved in a "criminal wrongdoing."

By this argument, the parties focus on the "gist" of the Facebook post as a whole— its "'main point or material part,'" its "'essence.'" *D MagazinePartners v. Rosenthal*, ___ S.W.3d ___, ___, No. 05-14-00951-CV, 2015 WL 5156908, at *7 (Tex. App.—Dallas Aug. 28, 2015, no. pet. h.) (citing BLACK'S LAW DICTIONARY 805 (10th ed. 2014); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 959 (1981)). And while Everardo must establish that the article's "gist" is false and is defamatory concerning him by clear and specific evidence under the Anti-SLAPP statute, whether an article is capable of a defamatory meaning is initially a question for the court. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114–15 (Tex. 2000); *see Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013) ("If the statement is not reasonably capable of

10

a defamatory meaning, the statement is not defamatory as a matter of law and the claim fails."); *D MagazinePartners,* 2015 WL 5156908, at *5. So we determine this threshold matter-of-law question before we reach any clear-and-specific evidentiary review. *See Turner*, 38 S.W.3d at 114–15; *D MagazinePartners*, 2015 WL 5156908, at *5.

In construing the Facebook post to determine whether it is capable of a defamatory meaning, we must construe it as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it. *Turner*, 38 S.W.3d at 114; *Wheeler v. New Times, Inc.*, 49 S.W.3d 471, 474 (Tex. App.—Dallas 2001, no pet.); *see City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005) ("[P]ublications alleged to be defamatory must be viewed as a whole—including accompanying statements, headlines, pictures, and the general tenor and reputation of the source itself."). Such a person exercises care and prudence, but not omniscience, when evaluating allegedly defamatory communications. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004).

## B.    Discussion

Everardo argues that the "gist" of the post was that he was a corrupt and criminal politician or a criminal drug trafficker by association with Arturo. Entravision contends that the Facebook post does not have the defamatory meaning Everardo ascribes to it. We agree with Entravision.

The subject post only identified Arturo as Everardo's father, which is undisputedly a true statement. It then stated that Arturo, not Everardo, "was arrested with a [v]ery [i]mportant [s]um of [m]oney" in "the Rio Grande Valley."

Assuming for the purpose of this analysis that the statement about Arturo being

11

arrested with a "[v]ery [i]mportant [s]um of [m]oney" was false, we would only conclude that a person of ordinary intelligence, exercising care and prudence, might perceive it as a statement concerning Arturo and his activities.[10]  The Facebook post directed the statement to Arturo.   It did not expressly comment that Everardo was arrested or that he had a large sum of money.   We cannot conclude that the "gist" of the same post that contained this allegedly false statement implied that Everardo, as Arturo's son, personally engaged in any criminal conduct.

An analysis of the structure of the Facebook post provides the same result.   The article opened with Arturo's name, not Everardo's.   The first sentence described Arturo as an architect and then as Everardo's father.   A reference to his son's political position perhaps enhanced Arturo's importance, but the sentence defined Arturo.   The article next described the alleged activities of Arturo, not Everardo.   An unlabeled picture of two unnamed men, an older man—Arturo—and a younger man—Everardo, appeared under the post.   The placement of the photograph below the article arguably emphasized the father-son relationship, but when viewed with the language of the post we cannot conclude that it created the impression to a person of ordinary intelligence that Everardo was involved in criminal wrongdoings.   Further, the tone of the article was that of a news bulletin, focusing on details about Arturo that would draw the reader's attention to an upcoming news broadcast.

Construing the article as a whole in light of the surrounding circumstances, we conclude that a person of ordinary intelligence, exercising care and prudence, but not

---

[10] We offer no opinion as to whether the statement or the "gist" of the Facebook post was defamatory as to Arturo, who is not a party in this appeal.   That matter is not before us.

omniscience, would perceive the "gist" of the article as concerning Arturo and his activities. *See Turner*, 38 S.W.3d at 114; *New Times*, 146 S.W.3d at 157; *Wheeler*, 49 S.W.3d at 474. We do not agree that an ordinary person's perception of the subject statement would entail any inference that Everardo was involved in any criminal wrongdoing with Arturo or that he was a corrupt and criminal politician or a criminal drug trafficker by association, as Everardo argues.

Based on this analysis, we conclude, as a matter of law, that the "gist" of the Facebook post is not defamatory because it is not reasonably capable of a defamatory meaning concerning Everardo. *See Turner*, 38 S.W.3d at 114–15; *see also Hancock*, 400 S.W.3d at 66; *D MagazinePartners*, 2015 WL 5156908, at *5. Because we have determined that the statement is not defamatory as a matter of law, Everardo cannot establish a prima facie case for each essential element of his defamation claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see also Hancock*, 400 S.W.3d at 66; *D MagazinePartners,* 2015 WL 5156908, at *5. And the trial court erred in denying Entravision's motion to dismiss Everardo's defamation claims. We sustain Entravision's second and third issues on this basis.[11]

## C.    Fee Shifting Provision

By its fifth issue, Entravision contends that Everardo invoked the mandatory fee shifting provision of the statute when he dismissed ETGP and EH after the motion to dismiss was filed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (providing that

---

[11] Having sustained Entravision's second and third issues, we do not reach Entravision's fourth issue that challenges portions of all affidavits filed in support of Everardo's response because it is not necessary to the disposition of this appeal. *See* TEX. R. APP. P. 47.1.

when a court orders dismissal of a legal action under the TCPA, the court shall award to the moving party (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions).   Entravision asserts that although it

> advised [a]ppellee and Tijerina prior to filing [its] motion (and prior to their filing suit) that the claims against ETGP and EH could not be sustained because ETGP and EH had no employees and had no operating activities, they still brought claims against ETGP and EH and refused to dismiss them from this lawsuit.   Appellee's actions necessitated the filing of the Anti-SLAPP Motion for these defendants.   Only <u>after</u> [a]ppellant[ ] filed [its] Anti-SLAPP Motion did [a]ppellee and Tijerina finally dismiss ETGP and EH from this lawsuit.   The last minute withdrawal of such claims does not insulate [a]ppellee from being liable for [its attorneys' fees, costs, and expenses] incurred in preparing the motion.

Although the law is well settled that a defendant's motion to dismiss that may afford more relief than a nonsuit affords constitutes a claim for affirmative relief that survives a nonsuit, Entravision did not make this argument to the trial court.   *See, e.g.,* TEX. R. CIV. P. 162; *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 390 S.W.3d 299, 300–01 (Tex. 2013) (per curiam); *Villafani v. Trejo*, 251 S.W.3d 466, 468–69 (Tex. 2008)*; Klein v. Dooley*, 949 S.W.2d 307, 308 (Tex. 1997) (per curiam).   Moreover, ETGP and EH are not parties to this appeal, and Entravision does not claim that it has standing to complain about this matter on their behalf.   We decline to afford Entravision the relief it seeks based on its non-suit argument.   We overrule Entravision's fifth issue.

14

## VI.   CONCLUSION

We reverse the trial court's order and remand for entry of judgment dismissing Jesus Everardo Villarreal Salinas's claims against Entravision Communications Corporation and Marianele Aguirre and for a determination of court costs, reasonable attorney's fees, other expenses, and sanctions, if any, as authorized by statute.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a).

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 30th
day of September, 2015.